UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ROBERT T. STOOKSBURY, )
)
     Plaintiff, )
) No. 3:09-CV-498
) (VARLAN/GUYTON)
V. )
)
MICHAEL L. ROSS, *et al.*,[1] )
)
     Defendants. )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and the order of the District Court [Doc. 71] referring the Motion to Compel Arbitration [Doc. 43], filed by Defendant Michael L. Ross and other entities ("the Ross Defendants")[2], to this Court for disposition. On June 4, 2010, the Court held a hearing to address the Motion to Compel Arbitration. Attorneys Wayne Ritchie, Anne Passino, and James Tipton were present representing the Plaintiff. Attorney Albert Harb was present representing the Ross Defendants. Attorney Andrew Sneed was present representing Defendants Patricia Ross and Rebecca Rose Ross Jordan.

---

[1] A Suggestion of Bankruptcy [Doc. 84] has been filed in the record stating that on April 14, 2010, Defendant Pine Mountain Properties, LLC, ("Pine Mountain") filed a Chapter 11 petition for bankruptcy. To the extent this Order or its contents would violate the automatic stay imposed by Pine Mountain's bankruptcy, the Order is inapplicable to Pine Mountain.

[2] In this Order, the term "Ross Defendants" refers to Michael L. Ross and the following entities: LTR Properties, Inc.; RPL Properties, Inc.; LC Development Company, LLC; Rarity Communities, Inc.; Tellico Lake Properties, L.P.; Nickajack Shores Holdings, LLC; Rarity Corporation; Rarity Club Corporation; Rarity Property Management, Inc.; Rarity Ridge Club, Inc.; Rarity Investment Company, LLC; Rarity Communities, Inc.; Broadberry Development Company, LLC; Hiwassee Properties, LLC; RM Company, LLC, LOM Development Company, LLC; and VPI Company, LLC.

Attorney Martin Bailey was present representing Defendant Gregory Baker, and Attorney Christopher Riedl was present representing Defendant Tracy Riedl.

The Court has heard the parties' positions and reviewed the parties' filings. For the reasons more fully explained below, the Court finds the Ross Defendants' Motion to Compel Arbitration is not well-taken, and it will be **DENIED**.

**I.   BACKGROUND**[3]

In the mid-1990's, Defendant Michael Ross and his brother, Dale Ross, now deceased, began transacting business in real estate. In approximately 1998, Michael and Dale Ross established Defendant Rarity Communities, Inc., a Tennessee corporation, as 50-50 owners. Through Rarity Communities, Inc., and other related business entities they created and formed, Mike Ross and Dale Ross developed and marketed a waterfront community known as Rarity Bay. [Doc. 73 at ¶ 20].

In 2001, Michael Ross, through LTR Properties, Inc., purchased a controlling interest in another lakefront property owned by Plaintiff Robert T. Stooksbury, Jr. and Ward Whelchel. Michael Ross, the Plaintiff, and Mr. Stooksbury formed an entity called Tellico Landing, LLC, ("Tellico Landing"), for the purpose of developing and marketing the lakefront property. Michael Ross, through LTR Properties, Inc., acquired a controlling, fifty percent (50%) ownership interest in Tellico Landing, while Mr. Stooksbury and Mr. Whelchel each had a twenty-five percent (25%) interest. LTR Properties, Inc., was given managerial control over Tellico Landing and was permitted to charge certain development fees and expenses for operating the development. [Doc. 73 at ¶ 21].

---

[3]The Plaintiff alleges the following facts. The Ross Defendants have moved to dismiss this action, [Doc. 85], but they have not yet filed an answer disputing the factual allegations of the Amended Complaint [Doc. 73].

The Plaintiffs allege that Michael Ross and Dale Ross formed additional entities, many of which are parties to this action. The Plaintiff concedes that these entities and the real estate property developments which they formed successfully generated cash flow in their initial years of operation, but the Plaintiff alleges that the Ross brothers began to operate the developments "in a fast and loose manner." The Plaintiff alleges that funds due to be used for infrastructure and amenities were diverted for the Ross brothers' personal benefit, for the benefit of their relatives, associates, and agents, and for launching new projects. [Doc. 73 at ¶ 23].

The Plaintiff maintains that the developments "were essentially operated as a pyramid/ponzi scheme." [Doc. 73 at ¶ 21]. The Plaintiff alleges that between January 1, 2004, and June 30, 2009, the Ross brothers with other associates and agents engaged in illegal diversion of funds, conduct to inflate property values including sham purchases and obtaining inaccurate appraisals, co-mingling and converting of funds including misappropriation of money meant to pay off mortgages on property held by Tellico Landing, and other wrongful acts as part of an illegal real estate enterprise. [Doc. 73 at ¶ 39-52; see also Doc. 73 at ¶ 74 for list of alleged wrongful acts].

Based upon these factual allegations of wrongdoing, the Plaintiff makes five claims against the Ross Defendants, including four claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(a)-(d). [Doc. 73 at ¶ 90-105]. The Plaintiff's final claim, "Count V," alleges a breach of agreement and breach of fiduciary duties. [Doc. 73 at ¶ 90-94]. The Plaintiff seeks compensatory damages not to exceed twelve million dollars ($12,000,000.00), which represent damages attributable to the conversion of funds, failure to develop the property of Tellico Landing as promised, and the failure to pay down Tellico Landing's

line of credit. [Doc. 73 at ¶ 116-118]. The Plaintiff also seeks punitive damages, treble damages, pre-judgment interest, court costs, and attorneys' fees. [Doc. 73 at ¶ 118].

## II.    ANALYSIS

The narrow issue presently before the Court is whether any portion of the Plaintiff's allegations should be subjected to arbitration and whether this matter should be stayed if any portion of the litigation is submitted to arbitration. Specifically, the Plaintiff's seek to compel arbitration of the Plaintiff's claims for breach of an agreement and breach of fiduciary duty.[4] [See Docs. 43 and 65]. The Plaintiff responds that the requested arbitration exceeds the scope of the arbitration provision agreed to or, in the alternative, it is unconscionable. [See Doc. 54 at 1].

The arbitration clause at issue is contained within the "Second Amended and Restated Operating Agreement of Tellico Landing, L.L.C.," ("the Agreement"), [Doc. 43-1 at 1-19], which the Plaintiff, Ward S. Whelchel, and Defendant LTR Properties Inc., ("LTR"), entered into on May 29, 2002. Section 8 of the Agreement is entitled "Management." Subsection 8.1 addresses

---

[4] In their motion, the Ross Defendants pray generally that "the Court compel arbitration of certain matters as described in the Complaint filed by the Plaintiff, Robert T. Stooksbury, Jr." [Doc. 43 at 2]. The only clarification of the "certain matters" to be arbitrated is the Ross Defendants' statement that:

> With respect to any damages as set forth in the Motion to Dismiss for Prior Suit Pending, which would be the subject of arbitration, Ross and LTR herewith move to compel the arbitration and/or to stay all proceedings until the arbitration and lawsuits filed in the Chancery Court for Blount County, Tennessee have been resolved and concluded.

[Doc. 43 at 3]. The Motion to Dismiss or Stay for Prior Suit Pending [Doc. 40] does not contain any clarification of the "damages" which the Ross Defendants seek to arbitrate. After the Plaintiff filed his Response [Doc. 54], the Ross Defendants clarified the relief it seeks by emphasizing that the "Court should enter an order compelling arbitration of the claims alleged in Count II of the Plaintiff's Complaint, which are within the scope of the mandatory arbitration provision . . . ." [Doc. 65 at 9]. Count II in the Complaint [Doc. 1] has been renumbered as Count IV in the Plaintiff's Amended Complaint [Doc. 73], and it was referred to as such at the hearing in this matter. At the hearing, the Ross Defendants represented that they only seek arbitration of the breach of agreement and breach of fiduciary duty claims contained in Count IV. The Court has considered this narrowed request in its analysis of the issue.

delegation of management authority; Subsection 8.2 describes a chief manager and other managers; Subsection 8.3 describes the term and election of managers; and Subsection 8.4 outlines the duties and authority of managers. [Doc. 43-1 at 11-12].

Subsection 8.5 is entitled "Development Fee- Costs and Expenses," and it is further divided into four sections designated as (a)-(d). Subsection 8.5(a) explains that LTR will be paid a 12% fee for its services as "Managing Member." Subsection 8.5(b) directs that "Management expenses" are the responsibility of LTR. Subsection 8.5(b) supplies examples of these "management expenses" including employee wages, rent, equipment, and supplies. Subsection 8.5(c) is entitled "Marketing and Third Party Expenses," and it states that "[n]otwithstanding subsection 8.5(b), the LLC hereby agrees to pay, in addition to the 12% development fee, certain "marketing" and "third party" expenses . . . ." "Marketing expenses" are described as costs and expenses incurred in connection with marketing including reasonable travel and entertainment expenses. "Third Party Expenses" are described as costs and expenses incurred on behalf of the LLC for example for services of engineers, lawyers, or accountants.

Subsection 8.5(d) follows and, in its entirety, states:

> In the event of any disagreement regarding whether a particular cost or expense is the obligation of the LLC or of LTR, a majority of all the Members shall decide. If there is a deadlock, and the amount in question is less than $5,000.00, then the cost or expense shall be paid by the LLC. If there is deadlock, and the amount in question is $5,000.00 or more, and the Members cannot break such deadlock after a period of thirty (30) days, then the question shall be submitted to binding arbitration pursuant to the Rules of Commercial Arbitration of the American Arbitration Association, with all costs and expense of the arbitration, including reasonable attorney's fees, to be paid by the non-prevailing party or parties.

[Doc. 43-1 at 14].

With the provision at issue in mind, the Court turns to the applicable law. As the Supreme Court of the United States has explained, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute . . . . [, b]ut, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Id. at 943.

The Agreement was entered into in Tennessee by citizens of Tennessee, and it is governed by Tennessee law. Tennessee contract law dictates that:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its "plain, ordinary, and popular sense." The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. The entire written agreement must be considered.

Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 703-04 (Tenn. 2008)(internal citations omitted).

The plain language of Subsection 8.5 clearly indicates a limited scope of application. The arbitration provision deals exclusively with costs. The specific provision itself instructs that "any disagreement regarding whether a particular cost or expense is the obligation of the LLC or of LTR" would be subjected to arbitration. [Doc. 43-1 at 14]. The provision does not provide that, for example, "any and all issues, conflicts, or allegations of fraud or disregard of fiduciary duties arising under the Agreement" will be provided to arbitration. Reading the provision indicates only disputes regarding costs and expenses will be referred to arbitration. The use of fees, licenses, wages, and

6

marketing expenses as examples does not indicate to a reader that the provision is meant to envelope large-scale allegations of capital misappropriation and fiduciary misconduct.

As stated above, Tennessee law directs that the plain language be viewed in light of the agreement as a whole in a way that does not neutralize other provisions. Viewing the Agreement, in its entirety, only reinforces the limited scope of Subsection 8.5(d). The inclusion of the provision within the "Development Fee - Costs and Expenses" section does not indicate an over-arching agreement in favor of arbitration. Moreover, the Agreement contains a second, limited arbitration provision addressing the removal of managers. [Doc. 43-1 at 16]. The inclusion of a second arbitration provision indicates that the parties to the contract consciously limited the matters to be submitted to arbitration and did not intend for the arbitration clauses to be read broadly.

Accordingly, the Court finds that Subsection 8.5(d) is a limited arbitration provision meant by the parties to address only disputed fees, licenses, and other expenses consistent with and similar to those provided as examples in Subsection 8.5.

At the hearing in this matter, the Ross Defendants represented to the Court that they only seek to have certain limited expenses to be referred to arbitration, but the Ross Defendants did not identify any costs or expenses that they hope to arbitrate in terms of specific services/goods provided or dollar costs of the disputed expenses. Without such descriptions and specifics the Court remains convinced that the broad allegations of large-scale fraud and misappropriation, which are the only matters now before the Court, are beyond the scope of the Subsection 8.5(d). If the Ross Defendants can identify specific discreet costs and expenses that are ripe for arbitration, the Court would encourage them to submit such claims to the American Arbitration Association ("AAA")

forthwith. At the hearing, the Ross Defendants represented that they had not submitted any claim to the AAA.

### III. CONCLUSION

In sum, the Court finds that Subsection 8.5(d) does not require arbitration of the allegations in this litigation.[5] Accordingly, the Court finds that the Motion to Compel Arbitration **[Doc. 43]** is not well-taken, and it is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge

---

[5] In light of the Court's conclusion that the allegations are outside the scope of Subsection 8.5(d), the Court will not address the Plaintiff's contention that the provision is unconscionable.