UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT T. STOOKSBURY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 3:09-CV-498 |
| v. | ) | (VARLAN/GUYTON) |
| | ) | |
| MICHAEL L. ROSS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

This civil action is before the Court on Defendants Rebecca Rose Ross Jordan and Rarity Management Company, LLC's Motion for Remittitur [Doc. 392] and the Ross Defendants' Motion for Remittitur [Doc. 398]. Defendants assert that plaintiff failed to put forth evidence on which the jury could evaluate the conduct of each defendant under the dictates of *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992), and that each of the punitive damage awards should be remitted to zero. Plaintiff filed a consolidated response in opposition [Doc. 402].

**I.     Standard of Review**

"[A] jury verdict should not be remitted by a court 'unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss.'" *Gregory v. Shelby Cnty.*, 220 F.3d 433, 443 (6th Cir. 2000) (citation omitted). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most

favorable to the awardee, it is convinced that the verdict is clearly excessive." *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004).

**II.     Analysis**

In *Hodges v. S.C. Toof*, the Tennessee Supreme Court established factors relevant to the determination of an award for punitive damages. "[T]he fact finder shall consider, to the extent relevant, at least the following" factors:

> (1) The defendant's financial affairs, financial condition, and net worth;
>
> (2) The nature and reprehensibility of defendant's wrongdoing, for example
>
> (A) The impact of defendant's conduct on the plaintiff, or
>
> (B) The relationship of defendant to plaintiff;
>
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
>
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
>
> (5) The expense plaintiff has borne in the attempt to recover the losses;
>
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
>
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
>
> (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

> (9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

833 S.W.2d at 901–02. The Court employs these factors in analyzing defendants' motions for remittitur.

Regarding defendants' net worth and financial condition, the Court notes that it is not necessary for a plaintiff to present any evidence of a defendant's financial condition in order to recover punitive damages. *Pruett v. Skouteris*, 743 F. Supp. 2d 718, 726–27 (W.D. Tenn. 2010) (citation omitted). Nevertheless, the jury was presented with evidence regarding defendants' financial condition during trial, including balance sheets for Michael Ross.

The nature and reprehensibility of defendants' wrongdoing was presented to the jury through the amended complaint, the allegations of which were taken as true [*See* Doc. 73]. *See* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."); *see also Commodity Futures Trading Comm'n v. FxTrade Fin., LLC*, No. 2:04-cv-2181, 2007 WL 4790811, at *3 (W.D. Tenn. Apr. 24, 2007) (citing cases). Also, the jury heard testimony from Steve Maynard, a homeowner, who explained how defendants' conduct and failure to build promised amenities diminished property values.

With respect to defendants' awareness of the amount of harm being caused and defendants' motivation in causing the harm, the amended complaint references defendants' diversion of cash flow for personal use and for the purpose of funding new developments, defendant Michael Ross's awareness of diversion and co-mingling of Rarity funds, the

manner in which defendant Michael Ross structured the subject enterprise and devised sham transactions, and the fact that defendant Rebecca Rose Ross Jordan was involved in the operation of the various entities and communicated directly with property purchasers and investors [*See*, *e.g.*, Doc. 73 ¶¶ 23, 28–30, 50–54].

The duration of defendants' misconduct was also set forth in the amended complaint, which provides that defendants perpetrated the subject illegal real estate enterprise during the time period between January 2004 and June 2009 [Doc. 73 ¶ 19]. The amended complaint likewise explains how defendants concealed their scheme, through the formation of sham entities, the lack of oversight into business practices, and concealing information from plaintiff [*See*, *e.g.*, *id.* ¶¶ 25, 36, 57].

Regarding plaintiff's expenses in attempting to recover his losses, the jury heard testimony from plaintiff, who testified he spent more than one million dollars in prosecuting this action. The jury also heard testimony from plaintiff's experts on this factor.

The amended complaint sets forth whether defendants profited from the activity as well. The amended complaint provides that over $100 million dollars in cash flow was generated from the subject developments in 2007 alone [Doc. 73 ¶ 38], and established that the proceeds of lot sales were being converted, misappropriated, and/or misused by defendants [*Id.* ¶ 116]. Defendant Michael Ross also testified at trial about expenditures on items such as cars and vacation rentals during the time the illegal scheme was being perpetrated.

The Court finds the other *Hodges* factors—whether defendants have been subject to previous punitive damage awards and whether defendants took remedial action—were not addressed during trial. *Hodges* requires a fact finder to consider the enumerated factors, however, only "to the extent relevant." 833 S.W.2d at 901. Further, the Court notes the jury made individualized awards of punitive damages and assessed no punitive damages with respect to some defendants, which suggests that the jury carefully considered the evidence before it in determining punitive damages.

## III. Conclusion

For the reasons explained herein, the Court does not find the punitive damages verdict is clearly excessive and therefore **DENIES** Defendants Rebecca Rose Ross Jordan and Rarity Management Company, LLC's Motion for Remittitur [Doc. 392] and the Ross Defendants' Motion for Remittitur [Doc. 398].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE