UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| ROBERT T. STOOKSBURY, JR., | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:09-CV-498 |
| | ) | | (VARLAN/GUYTON) |
| MICHAEL L. ROSS, *et al.*, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the Receiver's Petition for Implementation of Summary Proceedings, Disgorgement of Funds, to Restrain the Transfer of Receivership Assets and Enter a Stay of All Legal Proceedings Against Any Receivership Property (the "Petition") [Doc. 840]. Athena of SC, LLC ("Athena")[1] filed a response in opposition [Doc. 842], and the Receiver replied [Doc. 844].[2]

The matter was referred to Magistrate Judge H. Bruce Guyton, who recommended that the Court conduct a summary proceeding on the following issues:

> 1. Whether Athena should be ordered to disgorge the proceeds of the December 7, 2012, sale of Cabana No. I-4 at the Atriums of Palm Beach in Palm Beach County, Florida;

---

[1] Athena refers to itself as both "Athena of S.C., LLC" and "Athena of SC, LLC" [*See*, *e.g.*, Doc. 917].

[2] The Receiver also filed two supplemental briefs [Docs. 849, 976], and Athena responded to the second supplemental brief [Doc. 977]. The Receiver replied to this response [Doc. 980].

2. Whether the Court should order that any assets identified by the Receiver – including but not limited to the property at 366 Glascock Street, Alcoa, Tennessee – be restrained from transfer or sale without leave of the Court;

3. Whether Athena is improperly using and controlling Receivership assets;

4. Whether to stay legal proceedings against Receivership assets; and

5. Such other matters related thereto as the Court deems appropriate.

[Doc. 853]. Athena, as well as non-parties Tennessee Land and Lakes, LLC ("Tennessee Land and Lakes") and James Macri (Tennessee Land and Lakes and James Macri together "Macri"), filed objections to the R&R, but the Court overruled those objections and set the matter for a hearing [Doc. 903]. Present for the hearing was counsel for the Receiver, plaintiff Robert T. Stooksbury, Jr. ("Stooksbury"), Macri, and Athena [Doc. 929]. The Receiver, Greg Baker, and Gary Consorto testified, and counsel presented oral arguments and evidence. The Court ordered the parties to submit post-hearing briefs at the conclusion of the hearing [*See* Docs. 942, 944, 950].

Also pending before the Court is Athena's Motion to Dismiss Petition for Summary Proceedings Pursuant to FRCP 12(b)(1), (2), (4) and (5); or in the Alternative, Athena of SC LLC Moves for the Entry of an Order for Summary Judgment Pursuant to FRCP 56; Memorandum of Law; and Pre-Trial Memorandum of Law [Doc. 917]. The Receiver filed a response to the motion [Doc. 936], and Athena replied [Doc. 942].

2

Because the motions are intertwined, the Court addresses them both in this memorandum opinion. The Court assumes familiarity with this case, including all of the post-trial proceedings and matters relating to the receivership, and outlines only the positions of the parties and the procedural history relevant to the pending motions.

## I. Background

The Receiver filed the Petition against Athena, its principal Ted Doukas ("Doukas"), their related entities, agents and/or representatives (collectively referred to henceforth as "Athena"). The Receiver informs the Court that quarterly reports filed on September 7, 2012 [Doc. 732], and November 20, 2012 [Doc. 802], identified various assets deemed part of the receivership estate, and that no objections were filed with respect to those reports. The assets included, among other items, Atriums of Palm Beach Condominium, Unit 5-F, Tower I and Tower I Cabana 4 ("Condo and Cabana") as well as property located at 366 Glascock Street, Alcoa, Tennessee (the "Glascock Property"). The Receiver states that Athena has transferred the Cabana, initiated proceedings in state court to sell the Glascock Property, and placed one of the defendant-debtors in this case, Tellico Lake Properties, L.P., in involuntary bankruptcy.

The Receiver thus asks the Court to stay proceedings against receivership property, except by leave of Court, until a related case, *Stooksbury v. Ross*, case number 3:12-CV-548 ("*Stooksbury II*"), is resolved. He states that the Court has jurisdiction over Athena and can implement the requested action because a district court's power to supervise an equity receivership and determine the appropriate action to be taken in the

3

administration of the receivership is extremely broad and a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors. He further states that summary proceedings, disgorgement, and entry of a restraining order are necessary to preserve receivership assets and maintain the status quo. Finally, he states that a stay order is necessary to protect and preserve receivership assets pending the Court's disposition of the property, as well as to protect the interests of creditors and promote judicial economy.

The Receiver seeks the following relief:

1. disgorgement of the proceeds of the sale of the Cabana in the amount of $37,500 by ordering Athena to turn over proceeds of the sale to the receiver to be held in the receivership estate, subject to further order of the Court;

2. entry of an order restraining Athena from transferring any assets identified as part of the receivership estate without first seeking permission from the Court;

3. entry of an order requiring Athena to account for their continuing use, operation, and/or control over receivership assets;

4. entry of a stay preventing all persons from pursuing or continuing legal proceedings against the receivership assets and precluding transfer of such assets except by leave of Court;

5. granting an award of fees and costs to reimburse the receiver for expenses incurred due to Athena's wrongful interference with the orderly administration of the receivership estate;

6. providing further guidance as to the interplay between the receivership and the bankruptcy proceedings related to the judgment debtor Tellico Lake Properties, L.P.; and

4

7. such further other relief as the Court may deem appropriate and necessary to protect and preserve the receivership estate.

[Doc. 840]. Athena filed a response to the Petition [Doc. 842]. Athena asserts that the issue presented by the Receiver has already been decided three times: (1) by the January 11, 2013 report and recommendation in *Stooksbury II*, which recommended denying injunctive relief; (2) when the Court granted in part and denied in part plaintiff's request to enjoin Athena from pursuing collection of its judgments by levying upon a Florida condominium in this case; and (3) when the Court clarified the role of the Receiver and denied creditors' motions to intervene in this case. Athena thus argues that issue and claim preclusion bar the Receiver from the relief requested. Athena further asserts that in the Tellico Lake Properties, L.P. bankruptcy, Stooksbury filed an objection to entry of an order for relief, which was denied by the bankruptcy court. Athena asserts that bankruptcy court is the best forum to hear the issues raised by the Receiver because the bankruptcy will be administered by a trustee.

In reply [Doc. 844], the Receiver asserts that the receivership assets are subject to this Court's in rem jurisdiction. The Receiver further asserts Athena is subject to summary proceedings in this Court because it has become sufficiently involved in this litigation by actively participating in several proceedings, has been put on notice of the Receiver's schedule of assets, has failed to raise any objection to the schedule of assets, and has engaged in selling certain receivership assets for its own benefit.

5

The Receiver also filed a supplemental brief pursuant to Local Rule 7.1(d) [Doc. 849]. The Receiver states that it has come to his attention that American Harper Corporation ("American Harper"), via Gary Consorto, is seeking to collect $238,080.85 in social membership dues associated with 47 home sites owned by First State Financial. The Receiver believes that American Harper is attempting to use the Rarity Bay Golf and Country Club to collect social membership dues related to the Rarity Bay Golf Course and Country Club, which has been identified as a receivership asset. The Receiver notes he listed the Rarity Bay golf course, clubhouse, boat slips, and lots as assets of the receivership estate and intended that membership dues and fees associated with this property would also be included in the receivership estate. The Receiver seeks to supplement the requested relief to include an accounting of funds American Harper has collected under the name Rarity Bay Golf and Country Club.

Magistrate Judge Guyton entered a report and recommendation concerning the Petition (the "R&R") [Doc. 853]. He recommended that the Court conduct a summary proceeding on the following issues:

> 1. Whether Athena should be ordered to disgorge the proceeds of the December 7, 2012, sale of Cabana No. I-4 at the Atriums of Palm Beach in Palm Beach County, Florida;
>
> 2. Whether the Court should order that any assets identified by the Receiver – including but not limited to the property at 366 Glascock Street, Alcoa, Tennessee – be restrained from transfer or sale without leave of the Court;
>
> 3. Whether Athena is improperly using and controlling Receivership assets;
>
> 4. Whether to stay legal proceedings against Receivership assets; and

6

5. Such other matters related thereto as the Court deems appropriate.

[*Id.*]. Athena, as well as Macri, filed objections to the R&R, but the Court overruled those objections [Doc. 903]. Athena's objections were merely a restatement of the arguments presented to the magistrate judge, and Macri's objection was untimely.

The Court set the matter for a hearing. Present for the hearing was Wayne Ritchie II and James Moore, counsel for plaintiff, Richard Hollow, counsel for Macri, Gary Goldstein and Mark Brown, counsel for Athena, and Luis Bustamante and Katherine Layman, counsel for the Receiver. The Court heard argument from counsel, received evidence, and heard testimony from the Receiver, Greg Baker, and Gary Consorto. The Court ordered the parties to file post-hearing briefs at the conclusion of the hearing, and the parties complied [*See* Docs. 942, 944, 950].

The Receiver thereafter filed another supplemental brief pursuant to Local Rule 7.1(d) [Doc. 976]. The Receiver asserts that American Harper entered into a Mutual Termination and Release of Mandatory Social Membership for the Rarity Bay Golf and Country Club with Robert and Cheryl Mundle, which purports to relieve the Mundles from the payment of club fees that otherwise would be paid into the receivership. The Receiver claims that he has identified an interest in the club and that this action is in violation of the Court's memorandum and opinion setting forth the duties, responsibilities, and authority of the Receiver. The Receiver further asserts that American Harper's conduct contradicts the representations made by counsel during the hearing on the Petition. Specifically, the Receiver states that counsel for American

7

Harper represented that no adverse actions would be taken against the Receivership's interests pending the Court's resolution of the Petition.

In response, American Harper asserts that the Receiver makes material misstatements in the supplemental filing [Doc. 977]. In particular, American Harper states that counsel for the Receiver failed to disclose that the action complained of was taken by the club manager, Gary Consorto, in the ordinary course of operating the club. Further, American Harper informs the Court that counsel for the Receiver had been informed that the release only moved the membership requirement from one lot to another lot.

The Receiver replied, disagreeing with American Harper's characterization of the release [Doc. 980]. The Receiver also asserts that American Harper did not have the authority to unilaterally transfer and/or terminate the property rights identified as a receivership asset, and that Doukas continues to withhold information relevant to the use, operation, and control of receivership assets. The Receiver asks the Court to set aside the termination and release.

At the same time the parties were litigating the Petition, Athena filed the motion to dismiss the Petition pursuant to Rules 12(b)(1), (2), (4), (5), and (6) of the Federal Rules of Civil Procedure [Doc. 917]. In the motion to dismiss, Athena argues that the Court must dismiss the Petition.[3] Athena claims that it has not been provided due process, that

---

[3] In the title of the motion, Athena seeks summary judgment as an alternative form of relief. Athena, however, makes no argument in this regard. The Court, therefore, does not address any request for summary judgment.

summary proceedings are inappropriate, and that relief cannot be afforded because of res judicata.

The Receiver argues in response [Doc. 936] that the Court has in rem jurisdiction over the receivership assets and that summary proceedings are therefore appropriate. The Receiver further argues that res judicata does not apply here.

## II. Preliminary Issues

Before the Court addresses the merits of the relief sought by the Receiver, the Court must address the issues raised by Athena in its motion to dismiss, as well as related matters.

### A. Receivership Assets, Jurisdiction, and the Appropriateness of Summary Proceedings

The Receiver asserts that the Condo and Cabana, the Glascock Property, and the social membership dues are all receivership assets and were identified as such in previous documents filed with the Court. The Court has reviewed the filings and determines that the Condo and Cabana were identified on the preliminary schedules of assets filed in September 2012 and November 2012 [Docs. 732-2, 802-3]. The Glascock Property was also identified on the preliminary schedule of assets filed in November 2012 [Doc. 802-3]. While the Rarity Bay Golf Course, clubhouse, boat slips, and lots were likewise identified on the preliminary schedule of assets filed in September 2012 and November 2012 [Docs. 732-2, 802-3], there is no mention of any dues on the schedules. Nevertheless, the Receiver has the power to take possession of all assets and property

9

belonging to defendants, including "membership fees, dues and any other payments due or receivable on account of any interest in any real estate association" [Doc. 586]. The Court therefore finds that the social membership dues are part of the receivership estate.[4]

Having established that the property at issue is part of the receivership estate, the Court must determine whether it has authority to order the relief requested by the Receiver. While the case law related to summary proceedings like the one in the instant matter is sparse, the Court finds sufficient authority exists to support granting some of the relief the Receiver requested, even though Athena is a non-party.

The Court begins with a discussion 28 U.S.C. § 754. Pursuant to that statute, Congress authorized federal receivers to exercise broad powers in administering, retrieving, and disposing of assets belonging to the receivership "situated in different districts." 28 U.S.C. § 754. Section 754 "extends the receiver's jurisdiction to civil actions or proceedings *involving* property, real, personal, or mixed," and "gives the receiver complete jurisdiction over all involved property and the right to take possession of it." *U.S. Small Bus. Admin. v. Cottonwood Advisors, LLC*, No. 3:12-CV-1222-K, 2012 U.S. Dist. LEXIS 172345, at *6 (N.D. Tex. Dec. 4, 2012). Once appointed, in order to preserve his claims, a receiver must "file copies of the complaint and [the] order of appointment in the district court for each district in which the property is located." 28 U.S.C. § 754. By doing so, a receiver obtains complete jurisdiction and control over receivership property in any district. *See id.* Failure to file in any district within ten days

---

[4] The Court notes that no party or non-party objected to the identification of any of these assets as part of the receivership estate.

10

of the receiver's appointment generally divests the receiver of jurisdiction and control over property in that district. Thus, this Court's territorial jurisdiction is in "any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754." *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981). Here, some of the contested property is located within the Eastern District of Tennessee (i.e., the Glascock Property and the social membership dues). As to the property outside this District, the Receiver has filed evidence of his filing of copies of the complaint and the order of appointment in the districts where the contested property is located [*See, e.g.*, Doc. 944 (referencing May 7, 2012 Hearing Collective Exhibit 12)]. Accordingly, the Court finds that it has in rem jurisdiction over all the property at issue. *See SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1142–43 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

Despite this, Athena argues that the Court cannot proceed with the summary proceeding requested by the Receiver. Athena argues that it has been denied due process because the Receiver has not filed a complaint against Athena and has not provided Athena any initial disclosures as contemplated by the Federal Rules of Civil Procedure. Athena also argues that it has not been properly served under Rule 4 of the Federal Rules of Civil Procedure. Primarily, and as a general matter, however, Athena cites *SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007), in support of its argument that the Court lacks jurisdiction.

11

In *Ross*, Ernest Bustos and sixteen other intervenor-defendants appealed the district court's order from summary proceedings requiring them to disgorge commissions they had received through the sale of interests in pay phones. 504 F.3d at 1133. Bustos argued that the district court violated his due process rights by exercising personal jurisdiction over him because his name was not on the complaint. *Id.* at 1139. The Ninth Circuit agreed that the district court lacked in personam jurisdiction over Bustos; it therefore determined that the district court erred in entering the order of disgorgement against him. *Id.* at 1133. The Court finds *Ross* distinguishable from this case in many respects.

*Ross* is first distinguishable because the Ninth Circuit determined that Bustos was not a nominal defendant and Athena, arguably, is a nominal defendant. Noting that the Court of Appeals had "recognized a truncated form of process vis-à-vis a 'non-party depository as a nominal defendant to effect full relief in the marshaling of assets that are the fruit of the underlying fraud,'" *id.* at 1141, the Ninth Circuit found Bustos did not fall into any of the nominal defendant categories: "'a bank or trustee [that] has only custodial claim to the property,' . . . [or] persons who are in possession of funds to which they have no rightful claim, such as money that has been fraudulently transferred by the defendant in the underlying . . . action," *id.* at 1141 (first alteration in original and citation omitted). Here, the Receiver asserts that Athena possesses assets to which it has no rightful claim as a result of fraudulent conveyances or other wrongful action by defendant Michael L. Ross ("Ross"). This is in contrast to *Ross*, where the Receiver asserted that Bustos

12

violated securities law and attempted to litigate Bustos's liability within the context of the receivership.

Second, the Ninth Circuit found the district court did not have in personam jurisdiction over Bustos, distinguishing the case from *United States v. Arizona Fuels Corp.*, 739 F.2d 455 (9th Cir. 1984), where the Court of Appeals determined that a non-party submitted to the in personam jurisdiction of the district court in the context of a receivership because it had actively participated in the receivership proceedings via counsel and was named in and served with the receiver's order of appointment. *Id.* at 1147. Bustos, however, was not named as a party to the underlying action and even though he intervened, he contested jurisdiction from the outset of his participating in the litigation. *Id.* at 1147–49. Different from Bustos, Athena has actively participated in the receivership proceedings by filing motions and responses to motions and appearing at hearings. For example, Athena filed a response in opposition to plaintiff's motion to enjoin the foreclosure of real property [*See* Doc. 553]. The Court granted the motion, finding there is a "strong inference that defendants are fraudulently transferring property and assets to Mr. Doukas and the entities he owns, including Athena," and ordered that Stooksbury personally serve Athena a copy of the order [*Id.*]. Athena also challenged various motions filed by plaintiff [*see, e.g.*, Docs. 606, 612, 645, 670], and objected to the selection of the Receiver [Doc. 760].

While Athena has often appeared via "special appearance," the Court finds that designation is not dispositive because Rule 12 of the Federal Rules of Civil Procedure

"abolished the distinction between general and special appearances when the Federal Rules were adopted in 1938." *SEC v. Wencke*, 783 F.2d 829, 832 n.3 (9th Cir. 1986); *see also Haile*, 657 F.2d at 820 n.4 ("We note that a 'special appearance' to challenge jurisdiction is no longer necessary under the Federal Rules. A defendant must attack the validity of service of process pursuant to Rule 12(b)."). Moreover, even though Athena cursorily noted its objection to jurisdiction in various filings, arguments to support that assertion were not made until May 3, 2013, when Athena filed its motion to dismiss, almost one year after Athena made its first appearance in this proceeding on May 16, 2012 [*See* Doc. 514]. The Court thus finds Athena, unlike Bustos, falls within the ambit of *Arizona Fuels*.

Finally, Bustos's commissions were not located in a district for which the receiver had properly filed under § 754. 504 F.3d at 1139 n.9 ("We note that the Receiver made no attempt to assert in rem jurisdiction over any property belonging to Bustos."). As discussed already, the property at issue is either located within this district or a district where the Receiver has filed in accordance with § 754.

The Court also recognizes that *Ross* "did not abrogate the long line of . . . cases permitting summary proceedings; it merely clarified that those proceedings cannot be used to resolve disputes that involve equitable judgments about a non-party's behavior." *FTC v. NHS Sys., Inc.*, 708 F. Supp. 2d 456, 769 n.18 (E.D. Pa. 2009). This brings the Court to Macri's argument that the summary proceedings requested are inappropriate because they will "go to the central issue in [*Stooksbury II*], causing serious prejudice to

14

the parties in that case -- even though that case is currently stayed" [Doc. 875].[5] Marci notes that the request for a ruling with respect to the Condo and Cabana, as well as the Glascock Property, encompasses resolution of factual issues relating to business transactions between Macri and other parties, including Michael Ross and Ted Doukas, and that these issues form the basis of *Stooksbury II* wherein plaintiff alleges that Macri, Ross, and Doukas joined into an illegal conspiracy to engage in fraudulent transactions for the purpose of hindering Stooksbury.[6]

Neither Macri's argument nor *Ross*'s proscription against adjudicating a non-party's wrongdoing without "full *in personam* jurisdiction," 504 F.3d at 1144, persuades the Court that the requested summary proceeding is inappropriate. The receivership proceedings, while related, are distinct from *Stooksbury II*, which is an action for damages based upon, among other things, alleged violations of RICO. Here, because of *Ross*'s proscription, the Court will not determine whether any individual or entity violated RICO or engaged in any other wrongful behavior in obtaining ownership of those assets; the Court will make that determination in *Stooksbury II* and/or other

---

[5] The Court stayed *Stooksbury II* because of the indictment of Ross, but the Court lifted the stay during the pendency of the Petition.

[6] Macri's response to the Petition was untimely and the Court therefore does not consider it. The Court nevertheless finds it appropriate to address the interplay between the receivership and *Stooksbury II*.

proceedings.[7] *Ross*, 504 F.3d at 1142 (distinguishing cases that "require[] only an adjudication of ownership; [not] a determination that a non-party has violated the law"); *see also FTC v. J.K. Publ'ns, Inc.*, No. CV 99-00044 ABC (AJWx), 2009 WL 997421, at *4 (C.D. Cal. Apr. 13, 2009) (finding summary proceedings appropriate because the receiver was seeking determination that non-party's intestate interest vested in the receivership estate).

Despite Athena's arguments to the contrary, the Court finds the requested summary proceeding is appropriate.[8] "For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard." *Am. Capital Inves.*, 98 F.3d at 1146; *see also Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006); *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001); *Wencke*, 783 F.2d at 836–38; *SEC v. Universal Fin.*, 760 F.2d 1034, 1037 (9th Cir. 1985) (where investors had been afforded virtually all procedural protections that would have been available in plenary

---

[7] Accordingly, the Court will not determine "[w]hether Athena is improperly using and controlling Receivership assets" as the magistrate judge recommended. Nor will the Court make a determination at this time that any conveyances were fraudulent. Indeed, nowhere in the context of the Petition and related filings does the Receiver ask the Court to declare that any particular conveyance was fraudulent.

[8] As discussed, the Court initially referred the Petition to the magistrate judge, who recommended that the Court conduct a summary proceeding. The Court accepted this recommendation [Doc. 903]. Nevertheless, given the course of the litigation since entry of that order, the Court outlines in detail why the summary proceeding requested by the Receiver is appropriate. The Court does not address the appropriateness of summary proceedings in general. Instead, the Court addresses the appropriateness of summary proceedings with respect to the issues raised in the Petition and supplemental briefs only.

16

proceedings, and had notice of the nature of the proceedings, it was not improper for the district court summarily to adjudicate investors' claims to notes).[9] Indeed, "the traditional rule is that summary proceedings are appropriate and proper to protect equity receivership assets." *Ariz. Fuels*, 739 F.2d at 458–59.

The Court finds Athena has received adequate notice and has had ample opportunity to be heard. With respect to the Petition, Athena has responded to the Petition, filed objections to the R&R, appeared at the hearing on the Petition and presented evidence, and filed a response to a supplemental filing. The Court cannot contemplate that any additional opportunities are required under the case law. Moreover, to the extent the Court grants the relief requested by the Receiver, as the Court has discussed, the Court will not be determining any fraudulent conveyance claim, nor will it be adjudicating any wrongdoing on the part of Athena or any other individual or entity; rather, the Court will be addressing the possession of property and/or funds so that it cannot be dissipated.

### B. Collateral Estoppel

Athena also asserts that the issues raised by the Receiver previously have been decided by this Court (1) when it declined to enjoin Athena from enforcing its judgments against property other than the lots secured by the Sun Trust Bank mortgage assigned to Athena, (2) when it denied two motions to intervene on the basis that the receivership did

---

[9] Athena asserts that cases involving receivers in SEC proceedings are inapposite; the Court, however, finds these cases persuasive with respect to the issues before the Court.

not impede parties from pursuing the collection of their judgments, and (3) when it clarified that the role of the Receiver is to not interfere with any creditor's efforts to execute on their own rights and judgments. Athena claims the Court also addressed the issue in *Stooksbury II* when the magistrate judge recommended that the Court deny plaintiff's motion for an injunction and appointment of a receiver.

Issue preclusion, also known as collateral estoppel, bars the relitigation of issues that have already been litigated and lost in an earlier action. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984); *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999). A party is barred from re-litigating an issue if the issue was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment in the earlier case. *Rally Hill Prods., Inc. v. Bursack*, 65 F.3d 51, 54 (6th Cir. 1995) (citing *Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987)).

The Court finds that issue preclusion does not bar the Court from considering the issues raised by the Receiver. As to the recommendation of the magistrate judge in *Stooksbury II*, the Receiver is not a party to *Stooksbury II*, and therefore issue preclusion cannot apply.[10] As to the determinations already made by the Court in this case, there is no res judicata because this is the same case. Even so, the Court is familiar with the three decisions relied upon by Athena to support its argument and does not believe that the adjudication of those issues precludes litigation of the issues raised by the Receiver because they were distinct from the issues now before the Court.

---

[10] Moreover, the Court has not yet accepted or rejected the magistrate judge's recommendation.

## III.    Analysis of the Receiver's Petition

Having addressed the issues raised in Athena's motion to dismiss and other preliminary matters, the Court turns to the substance of the Petition and those matters it determined it would consider in accepting the magistrate judge's R&R.  Those matters include:

> 1. Whether Athena should be ordered to disgorge the proceeds of the December 7, 2012, sale of Cabana No. I-4 at the Atriums of Palm Beach in Palm Beach County, Florida;
>
> 2. Whether the Court should order that any assets identified by the Receiver – including but not limited to the property at 366 Glascock Street, Alcoa, Tennessee – be restrained from transfer or sale without leave of the Court;
>
> 3. Whether Athena is improperly using and controlling Receivership assets;
>
> 4. Whether to stay legal proceedings against Receivership assets; and
>
> 5. Such other matters related thereto as the Court deems appropriate.

[Doc. 853].  The Court will also consider the issues raised in the Receiver's supplemental filings.  For reasons already explained, however, the Court will not determine "[w]hether Athena is improperly using and controlling Receivership assets."

### A.    Disgorgement of the Proceeds of the Cabana and Setting Aside Termination and Release

The evidence presented to the Court establishes that on March 6, 2012, Ross owned the Condo and Cabana subject to a mortgage held by Wells Fargo Home Mortgage, which was in default [Docs. 840, 944].  On March 13, 2012, Athena recorded

19

an affidavit of foreign judgment in the Circuit Court of Palm Beach County, Florida as the holder of a judgment by assignment from Tennessee Land and Lakes [*Id.*].  Then, on July 3, 2012, Athena requested that the Sheriff levy the property and execution was issued on July 5, 2012 [*Id.*].  A notice of levy was recorded on August 22, 2012, and a sheriff's sale was held on October 10, 2012 [*Id.*].  With a bid of $1500, Athena was the highest bidder for the property [*Id.*].  Thus, a deed was issued to Athena [*Id.*].  A notice of cancellation of levy was filed on October 29, 2012 [*Id.*].  On December 7, 2012, Athena sold the Cabana to Deanna Stepanian by warranty deed for $37,500 [*Id.*].

The Receiver filed a quarterly report on September 7, 2012 [Doc. 732], which identified the Condo and Cabana as a receivership asset [Doc. 732-2].  As discussed, Athena was actively participating in this litigation at that time and it did not contest the Condo and Cabana being listed on the schedule of assets to be placed in the receivership. Accordingly, and for the reasons explained below, *infra* Section III.B., the Court finds that Athena must disgorge the proceeds of the sale of the Cabana.  *See SEC v. Commonwealth Chem. Secs., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) (disgorgement appropriate in connection with equity receivership to restore status quo).

Likewise, the Court finds it appropriate to set aside the Mutual Termination and Release of Mandatory Social Membership for the Rarity Bay Golf and Country Club between American Harper and Robert and Cheryl Mundle.  The Receiver has presented sufficient evidence that American Harper was on notice that the property was part of the receivership estate.

20

### B. Restraint of Transfer of Receivership Assets and Stay of Legal Proceedings Against Receivership Assets

The Receiver asks the Court to enter an order that would prevent any further dissipation of receivership assets and to stay legal proceedings against receivership assets, except by leave of Court. In determining whether to grant this relief, the Court considers "the interests of the Receiver" as well the interests of others. *Universal Fin.*, 760 F.2d at 1038. "[T]he interests of the Receiver are very broad and include not only protection of the receivership *res*, but also . . . considerations of judicial economy." *Id.*

The Receiver presented evidence persuading the Court that Athena has engaged in a course of conduct to evade the receivership and orders of this Court. First, it appears that Athena has refused to cooperate with the Receiver, specifically by refusing to provide documents relating to transactions between Ross and Athena. Second, it appears that Doukas's entity American Harper is engaging in activities that are dissipating the Rarity Bay Golf Course and Clubhouse. And the Receiver introduced evidence that American Harper used revenues of the golf course to pay for expenditures of Ross. Third, the Court finds that although American Harper took over the Rarity Bay Boat Docks, it has refused to service or maintain the docks. The boat docks were also transferred to American Harper without the approval of United Community Bank, which subjected the property to foreclosure [*See* Doc. 695]. Fourth, the Receiver identified the Glascock Property as a receivership asset, but Athena took steps to sell the property. Fifth, as determined above, despite being on notice that the Cabana was receivership

property, Athena sold the property. Finally, a Chapter 7 involuntary petition was initiated

with respect to Tellico Lake Properties, L.P., a defendant-debtor. Athena offered little

evidence to counter these points, including, as an example that Greg Baker, Ross's

former accountant, had cooperated with the Receiver and that the golf course at Rarity

Bay is well operated.

After reviewing the record in this case and considering the interests of the

Receiver as well as plaintiff, Ross, and Athena, the Court finds it appropriate to enter an

order that precludes the transfer, by sale or otherwise, of any assets identified by the

Receiver. This order will preserve the status quo and ensure the "just, speedy, and

inexpensive determination" of the issues raised in in the context of the receivership. *See*

Fed. R. Civ. P. 1. The Court also finds the order necessary to achieve the purposes of the

receivership [*See* Doc. 586]. Further, in light of the issues raised by *Stooksbury II*, the

Court finds this restraint and stay shall continue through the conclusion of *Stooksbury*

*II*.[11]

## C. Accounting

The Receiver also asks for a full and complete accounting of receivership assets

under Athena's control. While there was no objection to this request at the May 7, 2013

---

[11] Relatedly, Macri asserts that the Court stay the Receiver from claiming or recovering
property on the ground that it was transferred fraudulently or as part of the conspiracy alleged in
*Stooksbury II* through the conclusion of that case [Doc. 875]. As grounds for this request, Macri
asserts that the issues raised by the Petition "directly encompass[] certain facts about the nature .
. . of [certain transactions] between Tennessee Land and Lakes, [James] Macri, Ross, and
associated parties," "the basic allegation of *Stooksbury* [*II*]" [*Id.*]. Macri did not make a motion
for a stay, however, *see* Fed. R. Civ. P. 7(b)(1), and its response to the Petition was untimely.
The Court therefore does not consider this request.

22

hearing, the Receiver has submitted that Doukas refuses to produce a full and complete accounting of receivership assets under his control. In light of this information, and the findings above, the Court determines that a complete accounting of receivership assets is warranted. Athena will be ordered to provide a complete accounting of receivership assets under Doukas's control.

## IV. Conclusion

For the reasons explained, the Court hereby **DENIES** Athena's Motion to Dismiss Petition for Summary Proceedings Pursuant to FRCP 12(b)(1), (2), (4) and (5); or in the Alternative, Athena of SC LLC Moves for the Entry of an Order for Summary Judgment Pursuant to FRCP 56; Memorandum of Law; and Pre-Trial Memorandum of Law [Doc. 917] and **GRANTS** the Petition for Implementation of Summary Proceedings, Disgorgement of Funds, to Restrain the Transfer of Receivership Assets and Enter a Stay of All Legal Proceedings Against Any Receivership Property [Doc. 840] to the extent explained herein. It is hereby **ORDERED** that:

1. Athena shall disgorge any proceeds of the sale of the Cabana, which shall be held by the Receiver as part of the receivership estate;

2. the Mutual Termination and Release of Mandatory Social Membership for the Rarity Bay Golf and Country Club with Robert and Cheryl Mundle is set aside;

3. receivership assets may not be transferred until the conclusion of *Stooksbury II*, unless otherwise ordered by the Court;

4.      all legal proceedings against receivership assets are stayed until the conclusion of *Stooksbury II*, unless otherwise ordered by the Court; and

5.      Athena provide the Receiver a complete accounting of receivership assets within thirty (30) days of entry of this order.

In addition, having addressed the Petition and considering the status of the receivership, and upon review of the record in this case, including the Receiver's Motion for Clarification [Doc. 963], the Court hereby **REFERS** the motion for clarification [Doc. 963] to Magistrate Judge H. Bruce Guyton and **DIRECTS** the magistrate judge to issue a report and recommendation concerning the status of the receivership, which shall include among other matters the magistrate judge deems appropriate, a determination regarding the suitable time for concluding the receivership.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE