UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT T. STOOKSBURY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CV-498-TAV-HBG |
| | ) | |
| MICHAEL L. ROSS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the Chief District Judge [Doc. 1309].

Now before the Court are three interrelated motions: a Motion for Clarification [Doc. 1173], filed by Windriver Investments LLC ("Windriver") on January 13, 2014; a Joint Motion to Approve Compromise and Settlement of Receiver's Claim and Approve Transfer of the Rarity Point Declarant Rights from the Receiver to Windriver Investments, LLC [Doc. 1231], filed by Mr. Sterling P. Owen, IV (the "Receiver") on behalf of LTR Properties, Inc., RPL Properties LLC, and LC Development Company LLC, together with Windriver on February 25, 2014; and a Motion for Expedited Ruling on Motion for Expedited Ruling on Motion for Clarification [Doc. 1292], filed by Windriver on April 30, 2014. The motions are fully-briefed and ripe for adjudication. [See Docs. 1185, 1190, 1197, 1198, 1201, 1250, 1265, 1266, 1292].

For the reasons stated herein, the undersigned will **RECOMMEND** that: the Motion for Clarification be **GRANTED IN PART** and **DENIED IN PART;** the Motion to Approve Compromise and Settlement be **GRANTED**; and the Motion for Expedited Ruling be **GRANTED**.

**I.    BACKGROUND**[1]

In 2011, Windriver acquired from SunTrust Bank ("SunTrust") Notes and Deeds of Trust executed by Tellico Landing, LLC ("Tellico Landing") in connection with its development of certain property located in Loudon County, Tennessee, and formerly known as Rarity Pointe. Following Windriver's acquisition of these instruments and its appointment of Lewis S. Howard, Jr., Esq., as "Successor Trustee," Mr. Howard advertised the foreclosure sale of the Property in the News-Herald on May 31, 2012, June 7, 2012, and June 14, 2012 and sold the Property to Windriver, as the highest and best bidder, on June 21, 2012. Mr. Howard then executed Successor Trustee's Deeds in favor of Windriver.

Windriver alleges that it is an interested party with respect to the Declarant Rights,[2] which have been listed by the Receiver as part of the Receivership estate in this case. On August 21, 2012, Windriver filed a Verified Complaint for Temporary Restraining Order, Declaratory Judgment and Injunctive Relief against LTR Properties, Inc. ("LTR"), the Receiver, Athena of SC, LLC ("Athena"), RPL Properties, LLC ("RPL"), and LC Development Company, LLC ("LC Development") in the Circuit Court of Loudon County, principally seeking the entry of an Order declaring that Windriver possesses all Declarant Rights and accompanying obligations to the exclusion of all other persons or entities. This complaint was removed to this Court by the Receiver on August 24, 2012, see Doc. 1 in Case No. 3:12-CV-454.

On September 9, 2013, Athena, purportedly acting with Tellico Landing, filed a Complaint for Declaratory Judgment, and to Set Aside and Declare Trustees Deed Void in the Circuit Court for Loudon County, Tennessee, naming Windriver and Mr. Howard, as Trustee, as

---

[1] With the exception of the events described herein, the Court assumes familiarity with this case, including all of the post-judgment proceedings and matters relating to the Receivership.
[2] The Declarant Rights are numerous rights afforded pursuant to a Declaration of Covenants, Conditions, and Restrictions for Rarity Pointe dated June 26, 2002. See Doc. 1173-1 at ¶ 15. The Declarant Rights include effective control of the Rarity Point Community Association. See id. at ¶ 16.

2

defendants, ("the Athena Suit").

Athena sought a declaration that the Declarant Rights were never transferred to Windriver and are retained as property of Tellico Landing, of which LTR is allegedly part owner. Athena alleges that it is the owner of one hundred percent of the stock of LTR. Athena maintains that Windriver has wrongfully exercised dominion and control of the Declarant Rights.

The Receiver maintained that through his position he has assumed control of the assets of LTR, and as more fully explained below, the Receiver has argued that he is the holder of the Declarant Rights.

## II. POSITIONS PRESENTED

The positions presented to the Court can be summarized as follows.

### A. Motion for Clarification

In its initial filing, the Motion for Clarification, Windriver maintained that it was the appropriate Declarant and was empowered to exercise the Declarant Rights. Windriver moved the Court to issue an Order clarifying that: the issue of the ownership of the declarant rights involves a disputed asset of the Receivership Estate; the proper venue for determining the issue of the Declarant Rights is the United States District Court for the Eastern District of Tennessee; and that the remaining issues in the Athena Suit do not pertain to Receivership assets. [Doc. 1173].

The Receiver maintained that the Declarant Rights did not run with the land, and instead, he argued that the Declarant Rights constituted personal property of LTR. The Receiver agreed that the Athena Suit would not affect the Declarant Rights. The Receiver asserted that the Declarant Rights had previously been identified as part of the Receivership Estate, and the Receiver asserted that Athena's conduct regarding the Declarant Rights constitutes an effort to

3

circumvent the Court's Jurisdiction, including the Memorandum Opinion and Order entered by Chief District Judge Varlan on September 12, 2013, [Doc. 1035].

Athena asserted that, although the Complaint in the Athena Suit mentions the Declarant Rights, the Declarant Rights "have absolutely nothing to do with the relief requested." [Doc. 1190 at 2 (emphasis in original)]. In its response, Athena proposed that it file a Motion to Amend the Complaint in the Athena Suit "to eliminate references to the Declarant Rights and litigate other issues that are not clearly 'Receivership Assets.'" [Id.]. Athena conceded that this Court was the proper forum to litigate the issues regarding the Declarant Rights through Case No. 3:12-CV-454. [Id. at 3].

Both the Receiver and Windriver responded that there was no support for Athena's assertion that the issues presented in the Athena Suit did not involve assets of the Receivership. [See Docs. 1197, 1198]. Athena filed a final reply reiterating its position and moving the Court to permit it to pursue relief through judgment in the Athena Suit. Athena, however, then asserted that any "real property recovered would be subject to further order of this Court." [Doc. 1201 at 3].

**B.     Joint Motion to Approve Compromise and Settlement**

Approximately one month after the briefing on the Motion for Clarification closed, the Receiver and Windriver filed the Joint Motion to Approve Compromise and Settlement of the Receivers' Claim and Approve Transfer of the Rarity Pointe Declarant Rights from the Receiver to Windriver Investments, LLC. In the Joint Motion, the Receiver and Windriver noted that Plaintiff Robert T. Stooksbury obtained a Judgment against LTR, RPL, and LC, and they agreed that on September 7, 2012, the Receiver, in his initial Quarterly Report, identified the Rarity Point Declarant Rights as an asset of the Receivership Estate. The Receiver stated that he had undertaken an investigation into the Declarant Rights, their value, and Windriver's position. The

Receiver concluded that a valid legal dispute existed with regard to the Declarant Rights and concluded that a settlement with Windriver was an appropriate means for resolving the legal dispute.

Thus, the Receiver and Windriver jointly proposed that: the Receiver relinquish the Declarant Rights in exchange for $75,000.00 to the Receivership Estate; Windriver disavow any interest in any other Receivership asset; and the Court declare that ownership of the Declarant Rights to be assigned, transferred, and vested in Windriver free and clear of any further claims related to the Receivership Estate, including the Judgment Debtors. [Doc. 1231].

Athena responded in opposition arguing that the Court should clarify that any compromise between Windriver and the Receiver only settles the claims the Receiver possesses through judgment-debtors LTR, RPL, and LC and does not affect any rights asserted by Athena to the Declarant Rights. Athena proposed that the Court remand the Complaint in Case No. 3:12-CV-454 back to the Circuit Court for Loudon County. Athena also moved the Court to require the Receiver to undertake additional efforts at appraising the value of the Declarant Rights and strike the compromise if the value of the Declarant Rights was substantially more than the $75,000.00 proposed. [Doc. 1250].

Both the Receiver and Windriver filed final replies in support of the Joint Motion [Docs. 1265, 1266], arguing *inter alia* that Athena lacks standing to oppose the Joint Motion to Approve.

5

### III. ANALYSIS

The Court has considered each of the pending motions and the positions presented. The Court finds as follows.

### A. Motion for Clarification [Doc. 1173]

As stated above, Windriver moves the Court to enter an order finding that: the issue of the ownership of the Declarant Rights involves a disputed asset of the Receivership Estate; the proper venue for determining the issue of the Declarant Rights is the United States District Court for the Eastern District of Tennessee; and the remaining issues in the Athena Suit do not pertain to Receivership assets. [Doc. 1173].

The Court finds that the Receiver identified the Rarity Pointe Declarant Rights as property of the Receivership Estate on September 7, 2012. [See Doc. 732-2 at 3]. The Court finds that there is a valid legal dispute as to the ownership of the Declarant Rights between the Receiver and Windriver, and therefore, the undersigned **RECOMMENDS** that the Chief District Judge find that the issue of the ownership of the Declarant Rights involves a disputed asset of the Receivership Estate.

It appears to be undisputed that the proper venue for determining the issue of the Declarant Rights is the United States District Court for the Eastern District of Tennessee, and the undersigned **RECOMMENDS** that the Chief District Judge find that venue is proper in this Court. However, for the reasons stated below, the undersigned also **RECOMMENDS** that upon decision issuing on the Declarant Rights issue, the Court remand any remaining claims in Case No. 3:12-CV-454, to the Circuit Court for Loudon County, Tennessee.

With regard to Windriver's final request for clarification, the Court has reviewed the Complaint in the Athena Suit, Case No. 2013-CV-170 in the Circuit Court for Loudon County, Tennessee. The Court finds, first, that the clarification sought is not necessary to address the

Declarant Rights issues and the proposed compromise, and second, the Court finds that it would be premature to declare that the remaining issues in the Athena Suit do not pertain to Receivership assets.

Accordingly, the undersigned will **RECOMMEND** that the Motion for Clarification be **GRANTED IN PART** and **DENIED IN PART** and that the findings above be endorsed by the Court.

**B.     Joint Motion to Approve Compromise and Settlement of Receiver's Claim and Approve Transfer of the Rarity Point Declarant Rights from the Receiver to Windriver Investments, LLC [Doc. 1231]**

In the Joint Motion to Approve Compromise and Settlement, Windriver and Sterling P. Owen, IV, as Receiver and on behalf of LTR, RPL, and LC, move the Court to approve a compromise and settlement relating to the ownership and transfer of the Rarity Pointe Declarant Rights. As noted above, Athena of S.C., LLC, has presented what it describes as a "limited objection" to the Joint Motion. [Doc. 1250 at 1 (emphasis in the original)]. The Court has considered the filings before the Court, the history of these post-judgment proceedings, and applicable law, and the Court finds that the Joint Motion is well-taken.

District courts rarely decide property rights, real or personal, in the context of post-judgment proceedings. However, there are instances in which such decisions are necessary and appropriate. As the Court of Appeals for the Sixth Circuit has explained:

> There remains a class of cases, however, in which the federal courts may exercise their equitable powers and institute receiverships over disputed assets in suits otherwise falling within the federal court's jurisdiction, but which fall outside the statutory bankruptcy proceedings or other legislated domain. In this range of cases the federal courts exercise the traditional, common law powers of equity. The current rules specifically reference such equitable practices and incorporate them into today's civil proceedings. . . . Indeed, we have held in related proceedings to the instant case that "a district court has broad powers in fashioning relief in an equity receivership proceeding ...." Liberte

7

> Capital Group, LLC v. Capwill, 421 F.3d 377, 382 (6th Cir.2005).
>
> A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary. See 13 Moore's Federal Practice ¶¶ 66.02–.03 (3d ed.1999). As an officer of the court, the receiver's powers are coextensive with his order of appointment. Id.
>
> Once assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets. . . .
>
> To the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings. See Liberte Capital Group, 421 F.3d at 382; see also SEC v. Am. Capital Invs., Inc., 98 F.3d 1133, 1146–47 (9th Cir. 1996). The district court may require all such claims to be brought before the receivership court for disposition pursuant to summary process consistent with the equity purpose of the court. See SEC, Mosburg v. Basic Energy & Affiliated Resources, Inc., 273 F.3d 657, 668 (6th Cir. 2001).

Liberte Capital Group, LLC v. Capwill, 462 F.3d 543, 551-52 (6th Cir. 2006).

In the instant case, the Court finds that Athena lacks standing to lodge its self-described "limited objection," because the Court finds that Athena has failed to present a colorable claim against the Declarant Rights. Athena moves the Court to approve the compromise "without prejudice to any right that Athena *may* have to the ownership of the [D]eclarant [R]ights." [Doc. 1250 at 6 (emphasis added)]. In its response, Athena fails to cite any basis for the Court to find that it has standing to lodge an objection to the proposed disposition of the Declarant Rights.

Notwithstanding, the Court has reviewed the Complaint for Declaratory Judgment filed in the Circuit Court for Loudon County, see Doc. 1173-2. In this Complaint, Athena asserts generally that it "is the assignee and owner of One Hundred Percent (100%) of the stock of

8

LTR." [Doc. 1173-2 at ¶ 9, see also id. at ¶ 32]. Athena does not offer any factual allegations supporting this general assertion. The Court has examined Athena's filings in Case No. 3:12-CV-454, but again, Athena's allegations of ownership are wholly devoid of any reference to facts demonstrating that Athena has a colorable claim to LTR's assets or has standing to dispute the ownership of the Declarant Rights. [See Docs. 21, 22 in Case No. 3:12-CV-454].

The Court finds that the generalities posed by Athena are insufficient and will not support delaying relief to the parties with valid claims. See Conlin v. Mortgage Elec. Registration Systems, Inc., 714 F.3d 355, 358 (6th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (finding mere "labels and conclusions" do not fulfill federal pleading standards).[3] The Court should not permit unsupported allegations to be used as a vehicle to cloud the title to the Declarant Rights indefinitely.

The Court has considered the Court's prior rulings, including the Court's Memorandum Opinion and Order entered March 12, 2013, in Case No. 3:12-CV-454, and the Memorandum Opinion and Order entered June 12, 2014, in the instant case. Specifically, the Court has considered the possibility of the ownership of the Declarant Rights being decided in a third related case: Stooksbury v. Ross, 3:12-CV-548 ("*Stooksbury II*"). However, the Court finds that the adjudication of the Declarant Rights need not be delayed or deferred to another case.

As the Court of Appeals has explained, "In addressing claims on the receivership estate brought before it, the district court may consider both the merits of the individual claim and the equities attendant to the situation." Liberte Capital Group, 462 F.3d at 553. The Court finds that Windriver and the Receiver have presented documentation of their respective claims to the

---

[3] Twombly and its progeny are most often applied to pretrial pleadings. However, Twombly is rooted in Rule 8 of the Federal Rules of Civil Procedure, and Rule 8 does not limit itself to only pretrial pleadings. Instead, it applies to claims for relief. See Fed. R. Civ. P. 8(a)(1). The Court believes that Rule 8's pleading standards as interpreted through Twombly and its progeny apply to Windriver's claim for relief and Athena's opposing claim for relief, notwithstanding the extraordinary procedural posture of this case.

9

Declarant Rights, and both Windriver and the Receiver have demonstrated a potentially cognizable claim to the Declarant Rights. On the other hand, the Court finds that Athena has presented little to demonstrate its claim or its standing to impede a reasonable resolution to this dispute.

The Court finds that the "equities attendant to th[is] situation" support approving the compromise at this time. Id. The Court finds that Windriver, a third-party who appears to be a holder in due course, will be afforded the full benefit of the bargain it anticipated when it purchased the Rarity Pointe assets, and the Receiver will further his goal of maintaining and, ultimately, liquidating assets toward repayment of the Judgment entered in this case. Further, persons owning property within the Rarity Pointe/Windriver development will benefit financially from finality of this issue, and any increase in the property values within the development will enure to the benefit of the citizens of Loudon County through property taxes. The equities of this situation weigh heavily in favor of approving this settlement at this time.

Finally, despite Athena's lack of standing, the Court has considered the objections posed with regard to the valuation of the Declarant Rights, and the Court finds that the valuation as presented is sound. The Court finds that Windriver and the Receiver had a legitimate legal dispute regarding ownership of the Declarant Rights, but both of their respective positions were met with convincing arguments to the contrary. Windriver faced the possibility of substantial devaluation of its property holdings through continued uncertainty regarding the Declarant Rights and through a potential declaration that those rights did not run with the land. The Receiver faced the potential of losing a significant asset of the Receivership estate. At the same time, the threat of a drawn-out legal battle over this asset could impede the goals of the Receivership considerably. The Court is convinced that both entities weighed their options appropriately and, after negotiations, arrived upon $75,000.00, a fair value under the

circumstances.

Accordingly, the undersigned will **RECOMMEND** that the Motion to Approve Compromise and Settlement be **GRANTED** and that the Chief District Judge endorse the proposed Order Granting Joint Motion to Approve Compromise and Settlement [Doc. 1231-1]. Further, it appears to the undersigned that upon entry of the Order Granting Joint Motion to Approve Compromise and Settlement, it would likely be appropriate to remand Case No. 3:12-CV-454 to the Circuit Court. Thus, the undersigned will further **RECOMMEND** that, if the Order Granting Joint Motion to Approve Compromise and Settlement is endorsed and entered, the Court enter a show cause order directing any party in Case No. 3:12-CV-454 to demonstrate why the case should not be remanded.

**C.     Motion for Expedited Ruling on Motion for Clarification [Doc. 1292]**

On April 30, 2014, Windriver filed a Motion for Expedited Ruling on Motion for Clarification [Doc. 1292], moving the Court to issue a ruling upon its Motion for Clarification as expeditiously as possible. Windriver submits, "Absent an expedited ruling by this Court on the Motion for Clarification, Athena, LTR, and Tellico will simply continue to thwart the Receivership and the Orders of this Court and impair the ability of WindRiver to develop its property." [Id. at 5].

No party or interested entity has responded in opposition to the Motion for Expedited Ruling, and the time for responding has expired, see E.D. Tenn. L.R. 7.1. The Court may treat this failure to respond as acquiescence to the relief sought. See E.D. Tenn. L.R. 7.2. Accordingly, the undersigned **RECOMMEND** that the Motion for Expedited Ruling be **GRANTED**.

11

## IV. CONCLUSION

Based upon the foregoing, the undersigned **RECOMMENDS**[4] that:

1. The Motion for Clarification **[Doc. 1173]** be **GRANTED IN PART** and **DENIED IN PART**, the findings stated above be endorsed by the Court**;**

2. The Motion to Approve Compromise and Settlement **[Doc. 1231]** be **GRANTED**;

3. Order Granting Joint Motion to Approve Compromise and Settlement be **ENDORSED** and **ENTERED;**

4. The Court enter a show cause order in Case No. 3:12-CV-454, with regard to remand of that case, as appropriate; and

5. The Motion for Expedited Ruling **[Doc. 1292]** be **GRANTED**.

**IT IS SO ORDERED**.

ENTER:

_____
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).